CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
August 17, 2026
LAURA A. AUSTIN, CLERK
BY: /s/L. Ayers
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| KELLY W. F.,[1] | ) | |
| | ) | Civil Action No. 7:25-cv-516 |
| Plaintiff, | ) | |
| | ) | **REPORT &** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | By: C. Kailani Memmer |
| SECURITY, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff Kelly W. F. (Kelly), by counsel, filed this action challenging the final decision of the Commissioner of Social Security (Commissioner) finding her not disabled and therefore ineligible for Disability Insurance Benefits (DIB). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). Neither party has requested a hearing, and oral argument will not aid in the decisional process. Thus, this case is ripe for decision.

Having considered the administrative record, the parties' filings, and the applicable law, I respectfully recommend to the presiding District Judge that the decision of the Commissioner be reversed and remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the merits of the Commissioner's final decision, judicial review is limited to assessing whether the administrative law judge (ALJ) applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). "Substantial evidence is

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in Social Security opinions.

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation modified); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990)).

Further, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). ALJs must not only reach a conclusion supported by substantial evidence but must also "build an accurate and logical bridge from the evidence to their conclusions." *Arakas*, 983 F.3d at 95.

## CLAIM HISTORY

Kelly was born in 1976, and she graduated from college and completed some post-graduate education. R. 188, 47–48. On November 18, 2021, Kelly applied for DIB, and she alleged a disability onset date of September 9, 2021. R. 188. Kelly's claim was initially denied on August 17, 2022, R. 105, and again upon reconsideration on June 20, 2023. R. 115. On July 14, 2023, Kelly requested an ALJ hearing. R. 121. On May 14, 2024, the ALJ held a hearing, and Kelly was represented by counsel. R. 42. Ms. Patricia McFann testified as a vocational expert. R. 63–70. On June 12, 2024, the ALJ issued an "Unfavorable

Decision," analyzing Kelly's DIB claim under the familiar five-step process,[2] and finding her not under a disability from September 9, 2021, through June 30, 2023, the date last insured. R. 34.

At the first step, the ALJ found Kelly had not engaged in substantial gainful activity from September 9, 2021, through June 30, 2023, the date she was last insured. R. 21. At the second step, the ALJ found Kelly had the following severe impairments: (1) lumbar, thoracic, and cervical degenerative disc disease with upper and lower extremity radiculopathy, (2) carpal tunnel syndrome bilaterally, (3) osteoarthritis of the hips and feet, (4) obesity, (5) bipolar disorder, (6) attention-deficit/hyperactivity disorder (ADHD), (7) generalized anxiety disorder, and (8) insomnia. *Id*. At the third step, the ALJ determined Kelly did not have an impairment or combination of impairments that individually or in combination met or medically equaled the severity of one of the listed impairments. R. 22.

The ALJ found Kelly had the residual functional capacity (RFC) to perform light work[3] with the following exceptions:

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to the claimant's past relevant work; and if not, (5) whether the claimant can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2), as recognized in Anthony W. v. Bisignano, No. 1:25-cv-400, 2026 WL 785452, at *6 (E.D. Va. Feb. 25, 2026), *report and recommendation adopted*, No. 1:25-cv-400, 2026 WL 783678 (E.D. Va. Mar. 18, 2026), (per curiam) (citing 20 C.F.R. § 404.1520); *Heckler v. Campbell,* 461 U.S. 458, 460-62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. *Oakes v. Kijakazi*, 70 F.4th 207, 211 (4th Cir. 2023) (citing *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017)). At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity, considering the claimant's age, education, work experience, and impairments to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Biller v. Berryhill*, No. 5:16-cv-00014, 2017 WL 4229362, at *2 (W.D. Va. Sept. 22, 2017).

[3] Light work is defined as follows:

> The claimant can never crawl or climb ladders, ropes, or scaffolds; can frequently climb ramps or stairs, balance, stoop, kneel, and crouch; should avoid concentrated exposure to cold, vibration, and hazards (like moving machinery or heights); with the upper extremities, the claimant can never overhead reach, and can frequently reach otherwise, handle objects, finger objects, or feel. She also requires a low-stress job (defined as having only occasional decision-making required and occasional changes in a work setting) with no production rate or pace work such as assembly lines (where the work of others would be dependent on the claimant's actions) and with occasional interaction with the public.

R. 24.

At the fourth step, the ALJ found Kelly was unable to perform any past relevant work. R. 33. At the fifth step, based on the testimony of Ms. McFann, the ALJ identified the following jobs which exist in significant numbers in the national economy, that Kelly could perform: (1) price marker, (2) office helper, and (3) mail clerk. R. 34. Thus, the ALJ determined Kelly was not disabled from September 9, 2021, through June 30, 2023, her date last insured. *Id.* The Appeals Council denied Kelly's appeal on May 28, 2025. R. 1. This appeal followed.

Because this court writes primarily for the parties who are familiar with the facts, the court dispenses with a lengthy recitation of the medical history from the relevant

---

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

period. To the extent specific records or information are relevant to or at issue in this case, they are addressed below.

## ANALYSIS

### I. Summary of the Parties' Arguments and the Court's Findings

Kelly presents three assignments of error and several subsidiary arguments. (Pl.'s Br., ECF No. 15, 9–22.) The court finds remand is necessary regarding one assignment of error, so the court need not address Kelly's other arguments. Kelly's first assignment of error is that the ALJ's assessment of her physical RFC is not supported by substantial evidence because the ALJ failed to properly explain his application of the supportability and consistency factors regarding the state agency medical consultants Bert Spetzler, MD, and William Rutherford, Jr., MD.[4] (*Id.* at 9.) Specifically, Kelly argues remand is warranted because "there is no evidence within the written decision to support a finding that the ALJ met the supportability or consistency articulation standards with respect to the prior administrative medical findings submitted by Drs. Spetzler and Rutherford." (*Id.* at 14.)

The Commissioner responds that (1) the ALJ properly evaluated and articulated his consideration of Kelly's physical and mental limitations, and (2) the ALJ's decision is supported by substantial evidence. (Def.'s Br., ECF No. 19, at 4–9.) Along with other

---

[4] As discussed below, on August 17, 2022, Dr. Spetzler and Joseph Leizer, Ph.D., issued the disability determination explanation at the initial level. R. 73–81. Later, on June 20, 2023, Dr. Rutherford, and Jo McClain, Psy.D., issued the disability determination explanation at the reconsideration level. R. 85–96. Dr. Spetzler and Dr. Rutherford's respective prior administrative medical findings addressed Kelly's physical impairments, but Dr. Leizer and Dr. McClain's respective prior administrative medical findings pertained to her mental impairments. R. 73–81, 85–96. Because Kelly's first assignment of error focused on her physical impairments, the court need not address the ALJ's discussion of Dr. Leizer McClain's respective prior administrative medical findings pertained to her mental impairments. R. 32.

arguments, Kelly's reply brief reiterates her argument that the ALJ's persuasiveness analysis failed "to conduct proper supportability and consistency analyses." (Pl.'s Reply Br., ECF No. 20, at 4–5.)

As a preview of the court's analysis below, the court finds the ALJ failed to adequately discuss the supportability and consistency factors regarding Dr. Spetzler and Dr. Rutherford's respective prior administrative medical findings. Accordingly, I recommend remand.

## II. Pursuant to 20 C.F.R. § 404.1520c, ALJs Are Required to Explain How They Applied the Supportability and Consistency Factors to Medical Opinions and Prior Administrative Medical Findings

When determining the persuasiveness of medical opinions, the ALJ must consider a list of five factors—supportability, consistency, relationship with the claimant, specialization, and other factors—pursuant to 20 C.F.R. § 404.1520c(c)(1)–(5).[5] Of the five factors, supportability and consistency are the most important. 20 C.F.R. § 404.1520c(a), (b)(2). However, "when articulating their findings about whether an opinion is persuasive, ALJs need only explain how they considered the most important factors of supportability and consistency." *Smith v. O'Malley*, No. 5:23-cv-11, 2024 WL 996736, at *3 (E.D.N.C. Jan. 22, 2024) (citation modified) (citing *Corbin v. Kijakazi*, No. 2:20-cv-60-M, 2022 WL 990487, at *2 (E.D.N.C. Mar. 31, 2022)), *report and recommendation adopted*, No. 5:23-cv-11, 2024 WL 992231 (E.D.N.C. Mar. 7, 2024). "Supportability is the degree to which a provider supports their opinion with relevant,

[5] Claims filed on or after March 27, 2017, must be considered in accordance with 20 C.F.R. § 1520c. 20 C.F.R. § 404.1520c ("For claims filed (see § 404.614) on or after March 27, 2017, the rules in this section apply. For claims filed before March 27, 2017, the rules in § 404.1527 apply."). Here, as noted above, Kelly applied for DIB on November 18, 2021, and she alleged a disability onset date of September 9, 2021. R. 188. Thus, 20 C.F.R. § 404.1520c applies in this case.

objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)–(2)).

The applicable Social Security regulation requires that ALJs "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [their] determination or decision." 20 C.F.R. § 404.1520c(b)(2). The "ALJ need not use any particular format or recite the words supportability or consistency, as long as the factors are satisfactorily analyzed." *Steven R. S. v. Bisignano*, No. 2:24-cv-595, 2025 WL 4065848, at *9 (E.D. Va. Dec. 9, 2025) (citation modified) (quoting *Todd A. v. Kijakazi*, No. 3:20-cv-594, 2021 WL 5348668, at *3 (E.D. Va. Nov. 16, 2021), *report and recommendation adopted*, No. 2:24-cv-595, 2026 WL 149899 (E.D. Va. Jan. 20, 2026). Importantly, an "ALJ's failure to adequately explain the supportability or consistency factors in making his or her evaluation of the persuasiveness of opinion evidence is grounds for remand." *Karla J. v. Kijakazi*, No. 3:22-cv-00125, 2023 WL 2981513, at *9 (S.D.W. Va. Jan. 30, 2023) (citing *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 30 (S.D.N.Y. 2022)), *report and recommendation adopted*, No. 3:22-cv-0125, 2023 WL 2663255 (S.D.W. Va. Mar. 28, 2023).

## III. Here, the ALJ Failed to Address the Supportability and Consistency Factors for Dr. Spetzler and Dr. Rutherford's Prior Administrative Medical Findings

Here, as noted above, Kelly argues the ALJ failed to adequately articulate his application of the supportability and consistency factors. (Pl.'s Br., at 14.) For the reasons below, I agree.

A review of Dr. Spetzler and Dr. Rutherford's prior administrative medical findings is warranted. On August 17, 2022, Dr. Spetzler and Dr. Leizer issued the disability determination explanation at the initial level. R. 73–81. Dr. Spetzler found Kelly had the following severe physical impairments: (1) disorders of the skeletal spine, and (2) disorder of muscle ligaments and fascia. R. 78. For the physical RFC, Dr. Spetzler determined (1) Kelly had exertional limits; (2) she could occasionally lift and/or carry (including pulling upward) 20 pounds; (3) she could frequently lift and/or carry (including upward pulling) 10 pounds; (4) she was unlimited (other than lift and/or carry) for pushing and/or pulling in the upper and lower extremities; (5) she could stand and/or walk (with normal breaks) for a total of six hours in an eight hour workday; and (6) she could sit (with normal breaks) for a total of six hours in an eight hour workday. R. 80.

Dr. Spetzler opined Kelly had the following postural limitations: (1) she was unlimited in her ability to climb ramps/stairs; (2) she could frequently stoop, kneel, crouch, and crawl; and (3) she could never climb ladders/ropes/scaffolds. *Id.* Dr. Spetzler found Kelly did not have manipulative limitations. R. 81. According to Dr. Spetzler, Kelly had the following environmental limitations: (1) she was unlimited in her exposure to extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, and poor ventilation, and (2) she should avoid concentrated exposure to workplace hazards. R. 81. Dr. Spetzler opined Kelly was not limited to unskilled work because of her impairments. R. 83. According to Dr. Spetzler, Kelly was capable of light work. *Id.*

On June 20, 2023, Dr. Rutherford and Dr. McClain issued the disability determination explanation at the reconsideration level. R. 85–96. Dr. Rutherford opined Kelly had the following severe physical impairments: (1) carpal tunnel syndrome, (2)

disorders of the skeletal spine, (3) obesity, (4) peripheral neuropathy, (5) other disorders of gastrointestinal system, (6) disorders of the female genital organs, (7) osteoarthrosis and allied disorders, and (8) fractures of lower limb. R. 90. Dr. Rutherford agreed with Dr. Spetzler's physical RFC, except Dr. Rutherford found Kelly should be limited to frequent balancing and climbing of ramps and stairs, and that she should avoid concentrated exposure to extreme cold, vibration, and workplace hazards. R. 92–93. Dr. Rutherford found Kelly was limited to unskilled work because of her impairments. R. 95. Dr. Rutherford determined Kelly was capable of light work. *Id.*

In evaluating Dr. Spetzler and Dr. Rutherford's prior administrative medical findings, the ALJ offered the following explanation:

> The State Agency gave the claimant similar physical limitations as in the residual functional capacity but with no limitation on manipulation. (2A; 3A). They noted she underwent right wrist surgery in June 2022. The record also shows a left wrist surgery subsequently, and it does not indicate significant hand issues later in the record. However, she might have some residual issues from her carpal tunnel releases. In addition, she had significant cervical degeneration that may limit her reaching. Overall, these determinations are partially persuasive.

R. 31. As noted above, the ALJ found Kelly had the following severe physical impairments: (1) lumbar, thoracic, and cervical degenerative disc disease with upper and lower extremity radiculopathy, (2) carpal tunnel syndrome bilaterally, (3) osteoarthritis of the hips and feet, and (4) obesity. R. 21.

The ALJ failed to properly consider and discuss Dr. Spetzler and Dr. Rutherford's prior administrative medical findings on multiple grounds. First, the ALJ's persuasiveness analysis of Dr. Spetzler and Dr. Rutherford's prior administrative medical findings focused solely on Kelly's severe impairment of carpal tunnel syndrome. *Id.* The

ALJ completely failed to address Kelly's other physical impairments—(1) lumbar, thoracic, and cervical degenerative disc disease with upper and lower extremity radiculopathy, (2) osteoarthritis of the hips and feet, and (3) obesity—except for a conclusory statement regarding her cervical degeneration. *Id.* Moreover, the ALJ's persuasiveness analysis provided no discussion regarding Dr. Spetzler and Dr. Rutherford's findings regarding Kelly's postural limitations and environmental limitations. *Id.*

Second, the ALJ failed to properly discuss the supportability and consistency factors under 20 C.F.R. § 404.1520c(c)(1)-(2). As to supportability, the ALJ simply observed that Dr. Spetzler and Dr. Rutherford noted Kelly's left wrist surgery in June 2022 to support their opinions. But a discussion of supportability requires more: "Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence **and explanation** . . . ." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (emphasis added) (citing 20 C.F.R. § 404.1520c(c)(1)). The ALJ provided no discussion on how Dr. Spetzler and Dr. Rutherford supported their medical opinions with explanation or other objective medical evidence in the record. The court is not persuaded that the brief statement about Kelly's left wrist surgery satisfies the supportability prong.

Additionally, the ALJ offered an inadequate explanation of how he considered the consistency factor when he commented that the medical record showed Kelly had a subsequent right wrist surgery in June 2022 and the record did not show "significant hand issues later in the record." *Id.* Consistency analysis requires an ALJ to assess prior findings in the context of evidence from other medical and nonmedical sources. *See* 20

C.F.R. § 404.1520c(c)(2). Although there is more of a discussion of this prong as compared to supportability, the ALJ again failed to show his work and made conclusory statements to justify his position. For example, in finding the prior administrative medical findings partially persuasive, the ALJ raised only vague possibilities, without citation to the record, that Kelly "might" or "may" have additional limitations. R. 31. Such unsupported conclusions, without comparing or contrasting the prior administrative medical findings with other medical and nonmedical evidence in the record, fails to align with the applicable regulation.

Additionally, the ALJ failed to differentiate between Dr. Spetzler and Dr. Rutherford's prior administrative medical findings. R. 31. The ALJ considered their findings in tandem stating the "State Agency" found similar physical limitations as the RFC, but failed to address the different findings by Dr. Spetzler and Dr. Rutherford. R. 31. For example, Dr. Spetzler and Dr. Rutherford disagreed regarding Kelly's severe impairments. R. 78, 90. Additionally, Dr. Spetzler opined Kelly was unlimited in her ability to climb ramps/stairs, R. 80, but Dr. Rutherford found Kelly could only frequently climb ramps/stairs. R. 92–93. The ALJ should have provided a more fulsome analysis that independently addressed Dr. Spetzler and Dr. Rutherford's respective prior administrative medical findings because their conclusions regarding Kelly's limitations differed. R. 31. Finding both opinions partially persuasive, without discussing the differences between the two, does not provide the court with the ability to meaningfully review the ALJ's reasoning. *See, e.g.*, *Warnick v. Bisignano*, No. 1:25-cv-1911, 2026 WL 1141158, at *3 (D. Md. Apr. 28, 2026) ("Without further explanation, the Court cannot determine why the ALJ discounted the supportability of the opinions and therefore

cannot properly review whether the ALJ's assessment was supported by substantial evidence.") (citing *Foster v. Comm'r of Soc. Sec. Admin.*, No. 820-cv-04319, 2022 WL 10199084, at *13 (D.S.C. Jan. 13, 2022)).

In summary, the ALJ failed to provide an adequate explanation of his application of the supportability and consistency factors regarding Dr. Spetzler and Dr. Rutherford's prior administrative findings. Accordingly, I recommend remand.[6] *See, e.g.*, *Jones v. Bisignano*, No. 1:25-cv-1953, 2026 WL 1900211, at *5 (D. Md. July 2, 2026) ("'Remand is warranted when an ALJ fails to properly consider the supportability and consistency of a medical opinion.'") (quoting *Cody C. v. Bisignano*, No. 1:24-cv-03739, 2025 WL 3077642, at *4 (D. Md. Nov. 4, 2025)).

## CONCLUSION

For the above reasons, I respectfully recommend to the presiding District Judge that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or

[6] Kelly made several arguments on appeal. Because the court determined that the ALJ erred as discussed above, the court declines to further address Kelly's remaining arguments. However, upon remand, the ALJ should examine all of Kelly's arguments and re-evaluate the evidence as a whole. *See Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

> recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

Entered: August 17, 2026

C. Kailani Memmer
United States Magistrate Judge